# IN RE: JAMES B.

[No. 773, September Term, 1982.]

*Decided April 11, 1983.*

The cause was submitted on briefs to WILNER, WEANT and ALPERT, JJ.

Submitted by *Alan H. Murrell, Public Defender,* and *Gary S. Offutt, Assistant Public Defender,* for appellant.

Submitted by *Stephen H. Sachs, Attorney General, Alice G. Pinderhughes, Assistant Attorney General, William A. Swisher, State's Attorney for Baltimore City,* and *Richard Lawlor, Assistant State's Attorney for Baltimore City,* for appellee.

ALPERT, J., delivered the opinion of the Court.

On May 13, 1982, James B. was brought before the Circuit Court for Baltimore City, sitting as a juvenile court for a waiver hearing [1] on charges stemming from the destruction of a bus window and the stealing of a quantity of liquor from a local establishment.

Pursuant to negotiations in the nature of a plea agreement, in return for the State withdrawing its petition for waiver to the Criminal Court, James B. admitted that he had committed the offenses of breaking with intent to steal and malicious destruction of property, and agreed to immediate disposition. The trial judge thereupon found him to be delinquent, committed him to the care and custody of the Juvenile Services Administration, and ordered him to make restitution in the amount of $331.00.

Defense counsel objected to the imposition of restitution and requested a separate restitution hearing for the purpose of requiring evidence of the amount of the loss. On June 4, 1982, the "restitution hearing" was held, and at the

---

1. The juvenile court may waive jurisdiction of a child alleged to be delinquent under certain circumstances. Md. Cts. & Jud. Proc. Code Ann. §3-817 (1980 Repl. Vol.).

conclusion thereof the court increased the amount of restitution to $451.55 and held both the appellant and his mother jointly and severally liable for that amount. An appeal from that order of restitution was timely filed and appellants argue that:

1. James B. is entitled to enforcement of the condition of his plea agreement that no restitution order be made;
2. The trial court erred in ordering restitution; and
3. The trial court erred in entering an order requiring James B's mother to pay restitution.

I. *Restitution as to James B.*

A. *The Negotiated Agreement*

In order to determine if appellant "is entitled to enforcement of the conditions of his plea agreement that no restitution order be made" the precise terms of that agreement must be determined. At the outset the Public Defender outlined the general terms of the agreement:

> Pursuant to negotiations with the State, James is now admitting to count one in both petitions.
>
> In the petition ending in 103, he is admitting to count one which is breaking into the premises of the Port City Pub with the intent feloniously to steal property valued over $300.00 and in the petition ending in 805 he is admitting to count one which is malicious destruction. That is a broken bus window, a mass transit bus. It is my understanding that the State will withdraw their waiver request and we will then waive notice and have disposition today.

Next in an apparent effort to comply with Maryland Rule 907b,[2] James B. was questioned at length by his attorney so

---

. **2.** Maryland Rule 907b provides as follows:

*Uncontested Responsive Pleading*

If a respondent child has filed a pleading admitting the allega-

that the Court could determine whether he understood the nature and possible consequences of admitting to the allegations of the delinquency petitions. Although "restitution" was not mentioned at that point as a possible consequence of the admission, the prosecution did imply that the state would not seek restitution. In reciting the statement of facts offered as a factual basis for the admitted allegations of the petition, the assistant state's attorney stated in pertinent part:

> The respondent, James B., was taken into custody on December 10th of 1981, advised of his rights, and in fact gave a statement to the police indicating that he was in fact involved in this offense and gave a statement in detail about the offense. The incident did occur in Baltimore City. The property was not recovered. *There is no claim for restitution.* (emphasis added).

The following colloquy between the trial judge, prosecutor and defense counsel provided further reason for the juvenile to believe that restitution might not be required:

> THE COURT: How about the liquor that was stolen? What happened to that $331.00?
>
> MR. LAWLOR: The liquor was not recovered, Your Honor. That amount of liquor was not recovered, and *they are not seeking restitution* in that matter.
>
> THE COURT: They are not seeking it.
>
> MR. LAWLOR: They are not.

---

tions of the juvenile petition or indicates to the court his intention not to deny those allegations, the court, before proceeding with an adjudicatory hearing, shall advise the child of the nature and possible consequences of his action or intended action. The court shall neither encourage or discourage the child with respect to his action or intended action, but shall ascertain to its satisfaction that the child understands the nature and possible consequences of failing to deny the allegations of the juvenile petition, and that he takes that action knowingly and voluntarily. These proceedings shall take place in open court and shall be on the record. If the respondent is an adult, the provisions of Chapter 700 (Criminal Causes) shall apply.

> THE COURT: What does that mean? Why would someone not seek restitution?
>
> MR. LAWLOR: Port City Pub has this problem all of the time. I think their feeling is — I have talked to them a number of times about problems over there — and they tell me that they don't want to come down to court because it takes too much time.

Although the State did not *seek* restitution after finding James B. delinquent, the trial judge, at the disposition stage of the proceedings, *sua sponte* determined to include restitution as part of his overall disposition of the case.

To determine the nature and extent of the agreement, we must consider not only that which was stated initially by the Public Defender, but also the relevant statements that followed. In so doing, we conclude that:

1. The agreement contemplated that the appellant would admit to certain allegations in the delinquency petition.
2. The State in return would abandon a waiver to the criminal court.
3. The State would *recommend* referral to the Juvenile Services Administration including commitment to "the training school where Mr. Leeds would take him into ... the Community Supervision Program." (emphasis supplied).
4. Since no claim had been filed by the victim for restitution, the State was not seeking restitution.

Appellant construes this as an agreement by the State that no restitution would be ordered, and contends that the trial court accepted that agreement when it found him delinquent; that the court then became bound by the agreement as though it were a party to it. The appellant does not contend that the State breached the agreement, but rather that he is entitled to have the agreement enforced, even against the court.

It is axiomatic that the trial court was not *ipso facto* bound by any agreement reached between the parties regarding restitution, assuming there was, in fact, such an agreement. The State's comment that no claim for restitution had been filed and that no claim was being made, even when coupled with the finding of delinquency, does not translate into an acquiescence by the court that restitution may not be ordered. Indeed, the court immediately made clear that restitution would be part of its disposition.

Although neither Md. Cts. & Jud. Proc. Code Ann. §3-819 nor Chapter 900 of the Maryland Rules includes provisions for plea agreement in juvenile proceedings, Maryland Rule 733 provides a useful analogue since the admission here was the functional equivalent in Juvenile Court of a guilty plea. *See, In Re: Appeal No. 544,* 25 Md. App. 26, 42-43, 332 A.2d 680, 689-90 (1975), wherein we stated:

> But even if there is no authorization for a plea of guilty in a delinquency proceeding, if admissions by the juvenile by answer or in open court have, in fact, the effect of a guilty plea, we believe the affirmative acceptance by the court should be required under the constitutional guidelines applicable to a plea of guilty in a criminal case. In other words, such admissions may be effectively accepted and considered by the court only under the standard applicable to waiver of constitutional rights as explicated by us in *Williams v. State,* 10 Md. App. 570.

*A fortiori,* when the plea agreement precipitates the admissions which are to be accepted and considered by the Juvenile Court, standards for its implementation, although certainly not binding, could be helpful. Maryland Rule 733 countenances plea bargaining in accordance with the *American Bar Association Standards of Criminal Justice,* "Pleas of Guilty," Standards 3.1-3.3.

Maryland Rule 733c is particularly instructive. While authorizing the submission of a plea agreement to the trial

judge for acceptance or rejection, it specifically provides, *inter alia,* that "[t]he agreement of the State's Attorney relating to a particular sentence, disposition or other judicial action is not binding on the court unless the judge to whom the agreement is presented accepts it." If the trial judge rejects the plea agreement, he must inform the parties of this fact and advise the defendant that the court is not bound by the plea agreement; that the defendant may withdraw his plea; and "that if the defendant persists in his plea of guilty . . . the sentence or other disposition may be less favorable to him than the plea agreement."

*See also, American Bar Association Standards for Criminal Justice* "Responsibilities of the Judge", Standard 14-3.3(b)(iii), (g)(1), (2) and the "Commentary" thereon at p. 14.80.

The Juvenile Justice counterpart of Standard 14-3.3b is found in the *American Bar Association Juvenile Justice Standards (Standards Relating to Adjudication)* "Responsibilities of the juvenile court judge with respect to plea agreements" Standard 3.3. Comparable to Maryland Rule 733, that Standard provides in pertinent part that:

> Disclosure of the plea agreement should be on the record in the presence of the respondent. The court should then indicate whether it will concur in the proposed agreement. If the court concurs, but later decides not to grant the concessions contemplated by the plea agreement, it should so advise the respondent and then call upon the respondent either to affirm or withdraw the plea.

Even if Maryland Rule 733 [3] were *per se* applicable to these proceedings, the trial court would not have been bound by the plea agreement unless it so agreed. The record in this case indicates no such agreement by the trial court but instead clearly indicates the opposite insofar as restitution is concerned.

---

**3.** We recognize that due process does not require trial courts to specifically enumerate certain rights, or go through any particular litany,

Although the appellant clearly recognizes his right to withdraw from the agreement, he obviously chooses not to do so now, thus confirming that implicit choice at the adjudicatory and disposition stages of the case. He simply did not seek to withdraw the admission [the plea] below and thus waived the right to complain in that regard. Maryland Rule 1085. *See, Barnhart v. State,* 34 Md. App. 632, 634, 368 A.2d 1124 (1977); *see also, Logan v. State,* 289 Md. 460, 482, 425 A.2d 632 (1981). Since the State did not breach its agreement, there is nothing more to enforce with regard to disposition. We shall affirm the adjudication and disposition of James B. with the exception of restitution in the amount of $120.00 as discussed *infra.*

B. *Restitution — The "Yoldande" Objection*

Appellant further contends that "because no proper predicate was presented for awarding restitution at the disposition hearing and *Yoldande* [In Re *Yoldande L.,* 49 Md. App. 310, 431 A.2d 743 (1981)] requires that restitution claims be resolved at that time, the trial court's award of restitution against James B. was improper."

This matter was originally scheduled before the court on a waiver hearing which through plea negotiations was converted into an adjudicatory hearing and subsequently a disposition hearing. *See,* Maryland Rules 907b, 914 and 915. When trial counsel requested a "restitution hearing" the disposition phase of the May 13th proceeding was continued until June 4, 1982. Since restitution was indeed ordered at the disposition hearing, this argument is without merit.

---

before accepting a defendant's guilty plea [or admission in a juvenile proceeding] *see,* Davis v. State, 278 Md. 103, 114, 361 A.2d 113 (1976). However, the record must disclose that the accused entered his plea of guilty voluntarily and understandingly. Maryland Rule 733, the American Bar Association Standards of Criminal Justice, and the Juvenile Justice Standards are but vehicles for the implementation of basic due process rights. Thus, they do provide serviceable guideposts for the implementation of Maryland Rule 907. Had the juvenile been advised that the trial judge was not bound by the recommendations of the State and that restitution was an option of the Court, the question of restitution might have evaporated at trial. A useful guide entitled "Advice Regarding Admission of Facts Alleged in Petition or Guilty Plea" is available to every trial judge. *See, Maryland Trial Judges' Benchbook,* Juvenile Causes §5-901, p. JU-29.

Appellant complains that he was never put on notice that he would have to defend a claim for damage to the building in the amount of $120. A careful review of the record reveals that he is correct. Although he knew as of May 13th, 1982 that the State on June 4, 1982 would attempt to prove damages in the amount of $331.55, he was not notified of the $120.00 claim until the time of the June 4th hearing. This offends basic principles of due process. He was entitled to notice and the opportunity to be heard. *See, In Re Appeal No. 769,* 25 Md. App. 565, 335 A.2d 204 (1975). Accordingly, as to James B., the judgment for restitution in the amount of $451.55 must be vacated and the case remanded for a further evidentiary hearing to afford James B. the opportunity to challenge the $120 claim only (the sum of $331.55 having already been appropriately determined). Maryland Rule 1071.

II. *Restitution as to the Mother of James B.*

Finally, we consider the propriety of the trial judge ordering the mother jointly and severally liable with her son for the $451.55 in restitution. Initially, we dismiss as without merit appellee's argument that "appellant's mother is not a party to the present case because she did not file a notice of appeal. Therefore, the appellant lacks standing to raise the issue of his mother's being ordered to pay restitution." The simple answer to this argument is found in the Notice of Appeal filed in this matter. That notice, filed by the Public Defender's Office, requested "Please enter an appeal to the Court of Special Appeals from the judgment and order in the above captioned case, entered on the 4th day of June, 1982." As the order of June 4, 1982 included that restitution be made by the mother of James B., the notice of appeal was sufficient. *See, Matter of Sorrell,* 20 Md. App. 179, 183-185, 315 A.2d 110 (1974).

A judgment of restitution against the parent of a child is provided under Md. Cts. & Jud. Proc. Code Ann. §3-829 (1980 Repl. Vol., 1982 Cum. Supp.).[4] That section states in pertinent part:

4. For a discussion of the pertinent legislative history of this Section, *see,*

(a) The court may enter a judgment of restitution against the parent of a child or the child in any case in which the court finds a child has committed a delinquent act and during the commission of that delinquent act has:

(1) Stolen, damaged, or destroyed the property of another;

(2) Inflicted personal injury on another, requiring the injured person to incur medical, dental, hospital, or funeral expenses.

\* \* \*

(e) A judgment of restitution against a parent may not be entered unless the parent has been afforded a reasonable opportunity to be heard and to present appropriate evidence in his behalf. A hearing under this section may be held as part of an adjudicatory or disposition hearing for the child.

The record does not indicate that appellant's mother was ever served with the delinquency petition. That petition specifically sets forth "that restitution will be demanded from Margaret B. . . . [appellant's mother]." While the record indicates that appellant's mother was "summoned to appear as parent," it is unclear whether she was ever served with the petition. Although she was present on May 13 and June 4, 1982, it was never mentioned until the "restitution hearing" that restitution was being claimed against her. In fact when the trial judge ordered restitution on May 13th, he ordered it against James B. only. Because she was not afforded proper notice and a fair opportunity to defend the claim, judgment as to the mother must be vacated. *See, In Re Appeal No. 769, supra.* On remand, she should be served with a copy of the delinquency petition, receive notice of the hearing, and be afforded a reasonable opportunity to be

---

In Re: John H., 49 Md. App. 595, 601-04, 433 A.2d 1239 (1981). *See also,* 1982 Md. Laws, chapters 16, 388, 478.

heard and to present evidence in her behalf. *Id.* Maryland Rule 918. Even if we did not vacate the entire amount as to Margaret B., since a portion of restitution ordered as to James B. was improper, that portion as it relates to her must additionally fall. *In Re Appeal No. 504,* 24 Md. App. 715, 731, 332 A.2d 698 (1975). On remand, the mother's due process rights should be carefully scrutinized so that she is not deprived of property without due process of law, for a child's parents are not bound by the judgment of a juvenile court unless they were parties to the juvenile court proceeding. *See,* 1 *Wharton's Criminal Procedure* (12th ed. 1974) §10.

> *Judgment affirmed as to adjudication and disposition except that restitution order of June 4, 1982 is vacated; case remanded for further proceedings in accordance with this opinion; Mayor and City Council of Baltimore to pay the costs.*